## INTERNATIONAL EDUCATIONAL PUB. CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5762.

Circuit Court of Appeals, Third Circuit.

Aug. 7, 1935.

Rehearing Denied Sept. 17, 1935.

*Order rescinded 79 F.(2d) 999.

Frederick L. Pearce and George M. Morris, of Washington, D. C. (Morris, Kix Miller & Baar, of Washington, D. C., of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals. International Publishing Company, the petitioner, was created in 1908 for the purpose of developing the foreign business of the International Textbook Company, a company engaged in sponsoring correspondence school courses. In 1911, the petitioner exchanged 20,000 shares of its preferred stock and 50,000 shares of its common stock for concessions to use the textbooks of the International Textbook Company in Japan and China. The petitioner entered these concessions upon its books at $3,-

500,000, of which $1,000,000 represented the par value of the preferred and $2,500,000 the par value of the common stock. Nothing was done by the petitioner about the development of the Japanese or Chinese concessions until September, 1923, when the petitioner's sales manager, who later became its president, made a trip to Japan to investigate an offer for the promotion of the Japanese rights. In 1924, the sales manager, as a result of further investigation made during a second trip, recommended that the offer be declined and that the petitioner proceed with the development of its business in Japan. In 1925, the sales manager made a third trip to Japan and instructed the local manager to make a survey of business possibilities. This survey was made and resulted in a recommendation by the local manager in 1927 that the petitioner invest additional capital in Japan. The sales manager made a fourth trip to Japan in 1927, and then recommended that no further efforts be made to extend the petitioner's business in that territory. He instructed the petitioner's comptroller to charge off the cost of the Japanese rights, and this was done by a journal entry dated December 31, 1927, charging off $1,750,000 as the cost of the Japanese rights. In its income tax return for 1927, the petitioner claimed a deduction of $805,000, representing an alleged loss sustained by the abandonment of its Japanese rights in that year. The Commissioner refused to allow any part of this alleged loss as a deduction and assigned as his reasons that the operations in Japan had always shown a loss; that the rights had no value at any time; that the petitioner failed to show that the rights became worthless in 1927; and that the petitioner failed to show an equitable basis for the allocation of the cost of the Japanese rights. The Commissioner assessed a deficiency and was sustained by the Board of Tax Appeals.

 Upon review of the proceedings of the Board of Tax Appeals, we accept the findings of fact made by the Board and restrict ourselves to considerations of the questions as to whether the correct rule of law was applied to the facts found and whether there was substantial evidence before the Board to support the findings as made. Helvering v. Rankin, 295 U. S. 123, 55 S. Ct. 732, 79 L. Ed. ——. An examination of the record convinces us that there was ample evidence upon which the Board could base its findings of fact. Nor are we convinced that the Board applied an erroneous rule of law to the facts found. Deduction is claimed by the petitioner under authority of the Revenue Act of 1926, § 234 (a) (4), 26 USCA § 986 (a) (4), which provides:

234 (a). "In computing the net income of a corporation subject to the tax imposed by section 230 [section 981 of this title] there shall be allowed as deductions: * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise. * * * The basis for determining the amount of the deduction for losses sustained shall be the same as provided in section 204 [section 935 of this title] for determining the gain or loss from the sale or other disposition of property."

Section 204 (b), 26 USCA § 935 (b), referred to in the above-quoted statute, provides: 204 (b) "The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be (A) the cost of such property * * * or (B) the fair market value of such property as of March 1, 1913, whichever is greater."

The above-quoted sections allow deductions for losses sustained during the taxable year. The petitioner contends that there was evidence before the Board that the stock given by it in exchange for the Japanese rights had a fair market value in March, 1911, of at least $38 per share for the preferred and $17.50 per share for the common; that one-half of the stock issued on March 4, 1911, was issued in exchange for the Japanese rights and had a value of $817,500; that the Japanese territorial rights cost the petitioner a maximum of $817,500 and a minimum of $786,904.58, or an average of $802,202.29; and that these facts required a finding by the Board that the cost or the fair market value of the Japanese rights was over $800,000. There is nothing in the record, however, to show that any loss occurred in the taxable year, and there is therefore no need for a specific finding by the Board as to the cost or the fair market value of the Japanese rights. Proof that the petitioner charged a loss on its books in 1927 does not amount to proof that it sustained a loss in that year. The petitioner neither canceled nor surrendered its contract with the International Textbook Company to

develop the territorial rights in Japan. It could at any time resume activities in that country if it deemed the conditions favorable. The possibilities of profitable business in Japan were at all times conjectural and, on the other hand, the proof of loss of the petitioner's investment in Japan was equally conjectural. We think that before the petitioner is entitled to the benefit of deductions allowed by the above-quoted statute, it must prove that a loss was sustained in the taxable year, and that the petitioner has failed to meet this burden of proof.

The decision of the Board of Tax Appeals is affirmed.